# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| OLGA HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-08-CV-0582 OG (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:** Hon. Orlando Garcia
United States District Judge

### Introduction

Plaintiff Olga Hernandez brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Hernandez is not disabled for the purposes of the Social Security Act (the Act) and denying Hernandez's application for Supplemental Security Insurance (SSI) benefits. Hernandez asks the district court to reverse the Commissioner's decision and to render judgment in her favor. In the alternative, Hernandez asks the district court to reverse the decision and remand the case for further proceedings.

After considering Hernandez's brief in support of her complaint,[1] the brief in support of

---

[1] Docket entry # 13.

the Commissioner's decision,[2] Hernandez's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Hernandez exhausted her administrative remedies prior to filing this action in federal court. Hernandez applied for SSI benefits on April 2, 2004, alleging disability beginning March 24, 2004.[5] The Commissioner denied the applications initially and on reconsideration.[6] Hernandez then asked for a hearing before an ALJ.[7] An ALJ

---

[2]Docket entry # 17.

[3]Docket entry # 19.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, p. 84.

[6]*Id*. at pp. 25, 26 & 40-45.

[7]*Id*. at p. 51.

held a hearing on May 5, 2006.[8] The ALJ issued a decision on September 14, 2006, concluding that Hernandez is not disabled within the meaning of the Act.[9] Hernandez asked for review of the decision on September 16, 2006.[10] The Appeals Council reviewed the decision and remanded Hernandez's decision to the ALJ to further consider, and to provide more specific findings about, Hernandez's mental impairment.[11] The Appeals Council also directed the ALJ to obtain additional evidence from a vocational expert. The ALJ held a second hearing on July 18, 2007.[12] During the hearing, Hernandez amended her on-set date to the date of her 50th birthday.[13] The ALJ issued a second unfavorable decision on November 27, 2007.[14] Hernandez asked the Appeals Council to review the second decision.[15] The Appeals Council denied the request for review, determining no reason existed for reviewing the decision.[16] The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). Hernandez filed this action seeking review of the Commissioner's decision

---

[8]*Id*. at pp. 502-52.

[9]*Id*. at pp. 27-36.

[10]*Id*. at p. 64.

[11]*Id*. at p. 65.

[12]*Id*. at pp. 553-75.

[13]*Id*. at pp. 14 & 573.

[14]*Id*. at p. 11.

[15]*Id*. at p. 9.

[16]*Id*. at p. 6.

on July 18, 2008.[17]

## Issue Presented

Is the ALJ's decision that Hernandez is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[18] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[20]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[21] In reviewing the Commissioner's findings, a court must

---

[17] Docket entry # 1.

[18] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[19] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[20] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[21] *Martinez*, 64 F.3d at 173.

carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[22] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[23] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[24]

**1. Entitlement to Benefits**

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[25] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[26] A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other

---

[22]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[23]*Martinez*, 64 F.3d at 174.

[24]*Id*.

[25]42 U.S.C. § 1382(a)(1) & (2).

[26]42 U.S.C. § 1382c(a)(3)(A).

5

kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[27]

**2. Evaluation Process and Burden of Proof**

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[28] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[29]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[30] If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[31] The second step involves determining whether the claimant's impairment is severe.[32] If it is not severe, the claimant is deemed not disabled.[33] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[34] If it meets or equals a listed impairment, the claimant is

---

[27]42 U.S.C. § 1382c(a)(3)(B).

[28]20 C.F.R. §§ 404.1520 and 416.920.

[29]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[30]20 C.F.R. §§ 404.1520 and 416.920.

[31]*Id*.

[32]*Id*.

[33]*Id*.

[34]*Id*.

6

deemed disabled without considering her age, education, or work experience.[35] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[36] If the claimant is still able to do her past work, the claimant is not disabled.[37] If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[38] If the claimant cannot do other work, she will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[39] Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[40] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work.[41]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step five of the evaluation process. At

---

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]*Id.*

[39]*Leggett*, 67 F.3d at 564.

[40]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[41]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

step one, the ALJ determined that Hernandez had done no substantial gainful work since her alleged on-set date.[42] At step two, the ALJ determined that Hernandez has the following severe impairments: degenerative disc disease, carpal tunnel syndrome, and depression.[43] At step three, the ALJ determined that these impairments do not meet or medically equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[44] At step four, the ALJ determined that Hernandez can perform a limited range of light exertional work, including the ability to lift and/or carry ten pounds frequently and twenty pounds occasionally; to stand and/or walk for six hours per eight-hour day; to sit for six hours per eight-hour work day; and to stoop and crouch occasionally. The ALJ also determined that Hernandez cannot perform any frequent bending, stooping, or fine fingering; and that Hernandez is moderately limited in her ability to understand and carry out complex instructions.[45] At step five, the ALJ consulted a vocational expert and determined that Hernandez is capable of making a successful adjustment to work that exists in significant numbers in the national economy.[46] The ALJ concluded that Hernandez was not disabled as defined by the Act at any time from the alleged on-set date through the date of the ALJ's decision.[47]

---

[42]SSA record, p. 15.

[43]*Id*.

[44]*Id*. at p. 16.

[45]*Id*. at p. 18.

[46]*Id*. at p. 20.

[47]*Id*. at p. 21.

## C. Hernandez's Allegations of Error

Hernandez maintains that the combination of her impairments prevents her from obtaining and maintaining competitive employment. Hernandez first complains that the ALJ failed to explain why he discounted Dr. Rutilo Martinez's opinion that she is disabled. Dr. Martinez has treated Hernandez for several years. On April 18, 2006, Dr. Martinez completed a Texas Department of Human Services form, entitled "Medical Release/Physician's Statement." The instructions for completing the form indicate that the form was required because Hernandez sought public assistance based on disability. In answer to the question, "[t]o what extent is the individual able to work or participate in activities to prepare for work," Dr. Martinez responded: "the individual is unable to work, or participate in activities to prepare for work, at all: . . . The disability is permanent."[48] Dr. Martinez identified the disabling diagnosis as "depression, CTS [carpal tunnel syndrome]." Dr. Martinez first wrote and then struck out "lower back pain." The ALJ accorded little weight to Dr. Martinez's opinion that Hernandez is disabled.

The ALJ must ordinarily give a treating physician's opinion considerable weight in determining whether a person is disabled, but the ALJ may reject the opinion of a physician when the evidence supports a contrary conclusion.[49] The ALJ may assign little or no weight to a treating physician's opinion when the opinion is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.[50] The ALJ explained why Dr. Martinez's opinion is unsupported by medically acceptable clinical,

---

[48]*Id*. at p. 415.

[49]*See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

[50]*See Newton*, 209 F.3d at 456.

9

laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence, as follows:

> However, Dr. Martinez references no examination results or reports of specialized testing to support his opinion. Further he fails to list any of claimant's allegedly disabling depressive symptoms or to describe how they impact her ability to work. And despite the fact that he included a physical impairment as a contributing factor to the claimant's "disability," Dr. Martinez fails to indicate how the claimant's carpal tunnel syndrome has restricted her exertional abilities. Moreover, the extremely restrictive functional capacity limitation Dr. Martinez assesses the claimant with is entirely inconsistent with and not supported by the rest of the medical evidence and the evidentiary record as a whole, particularly the opinion of Dr. Hostetter, which in its entirety indicates a far greater mental and physical residual functional capacity. Finally, on the matter of the claimant's disability from working, Dr. Martinez encroached upon an issue reserved solely to the Commissioner for determination.[51]

This quotation shows the ALJ explained why he discounted Dr. Martinez's opinion.

The record supports the ALJ's explanation. Despite treating Hernandez for years, Dr. Martinez never recorded complaints about carpal tunnel syndrome, wrist pain, numbness or dropping things.[52] The record contains no references to tests and/or test results usually associated with carpal tunnel syndrome: Phalen's maneuver, Tinel's sign, nerve conduction tests. Rather than documenting disabling effects of depression, Dr. Martinez observed that Hernandez's depression was maintained with psychiatric medications.[53] The record includes no records of treatment by a psychiatrist or psychologist.

Although Hernandez contends that Social Security Regulation 96-2P required the ALJ to consult a medical expert, the ALJ properly applied the regulation. According to the regulation,

---

[51]SSA record, p. 19.

[52]*See id*. at pp. 429-89.

[53]*Id*. at p. 213 (Hernandez reported that depression was better and that she had increased energy level); p. 417 (Dr. Martinez wrote that depression was controlled with medication); p. 422 (Dr. Martinez observed that depression was stable with medication).

10

"[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well- supported by medically acceptable clinical and laboratory diagnostic techniques."[54] The regulation advises that the ALJ "may need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record." In Hernandez's case, there are no records of clinical signs or laboratory findings about carpal tunnel syndrome and very little about back pain. There are only medication treatment notes about depression. The ALJ did not need to consult a medical expert to interpret clinical signs and laboratory findings that do not exist. Because Dr. Martinez's opinion about Hernandez's is not well- supported by medically acceptable clinical and laboratory diagnostic techniques, the ALJ properly discounted the opinion.

Hernandez also complains that the ALJ failed to provide a rationale for not crediting her statements about the severity of her impairments. She maintains that the ALJ erred by ignoring her complaints about severe back pain, carpal tunnel syndrome, depression and anxiety. Hernandez relies on Social Security Regulation 96-7P, which addresses an ALJ's assessment of credibility. The regulation requires the ALJ to "carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements . . . ." Under the regulation, the ALJ must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining

---

[54] SSR 96-2P: Policy Interpreting Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, *available at* www.socialsecurity.gov.

physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." That is what the ALJ did. The ALJ's explanation follows:

> Despite her allegations to the contrary, the record does not support a conclusion that the claimant is disabled from all work activity, on the whole tending to detract from her credibility in general and particularly with respect to her allegations of being unable to work. In her application she alleged disability from working since May 30, 2001 and yet at the prior hearing she testified that in calendar year 2005 she worked as a part-time babysitter for about two months, caring for children ages five months and two years about one day per week, for which she was paid forty dollars per day. She also stated that during this time she actively sought other work, and notwithstanding her testimonial assertions that she cannot concentrate on what she reads and does not go out of the house, she stated that in looking for work she searched classified advertisements in the newspaper and on the internet, and rode the bus to job related appointments. At the prior hearing she also testified to daily activities incompatible with an inability to perform sustained work activity, describing going shopping with her daughter and engaging in regular exercise activity, including walking, generally by herself, for twenty to thirty minutes at a time and performing exercises for her shoulder and hands. And though she said the [sic] her daughter did her laundry for her, during her August psychiatric examination she reported doing her own housekeeping, laundry, and dishes, as well as paying bills and doing her own shopping. More recently she testified that although she generally stays indoors, she spends her time reading books and magazines, which suggests that she has experienced improvement in her ability to concentrate.
>
> The medical record is similarly non-supportive of the claimant's allegations of disability, as it fails to substantiate her asserted limitations or document a level of functional restriction incompatible with sustained work activity. The claimant alleges disability due in part on back pain and carpal tunnel syndrome. However, as a result of his August 2004 examination, Dr. Estrada opined that the claimant's symptoms were "out of proportion," noting that she made no neurological complaints and had a normal gait. The claimant had no costoverebral angle tenderness and was able to squat and arise from a squatting, to bend over and touch her fingertips to within three inches of the floor with difficulty, and walk tiptoe and tandem without difficulty. Her thoracic and lumbar spinal areas were non-tender, and she had no spasm in her lumbar spine and had straight-leg-raising indicators to seventy degrees bilaterally. Neurologically the claimant was oriented to person, place, and time; she had appropriate affect and normal gross mental status; and she had no pathological reflexes, muscle weakness, or atrophy, with

> good grip strength and normal sensation in all extremities. The claimant also alleges disability due to depression; however; as a result of her August 2004 mental status evaluation, Dr. Hostetter assessed the claimant with a GAF indicating only moderate symptoms, noting no special preoccupations of [sic] delusions, and no looseness of associations of tangential thinking with the claimant's mental activity. The claimant was oriented in three spheres, and though she showed degraded concentration ability, she had intact memory and fair insight, judgment, intellectual functioning, as well as normal pace and "average" persistence and ability to handle stress. Dr. Hostetter opined that although the claimant had not yet reached full remission, she had a fair prognosis as her disorder was responding to appropriate antidepressant medications, and she was competent to handle her own finances. Moreover, there is nothing in the more recently provided medical evidence to indicate a degree of functional restriction incompatible with sustained work activity.
>
> The claimant's assertions relative to her symptoms, pain, and functional limitations or restrictions on activities of daily living have been considered in light of the factors set in 20 CFR 404.1529, 416.929, and SSR 96-7P, and her allegations regarding the severity of her pain and limitations are not corroborated or substantiated in the medical evidence and are inconsistent with the record as a whole. Although I note that the claimant may experience a certain degree of pain, the record indicates that she is quite capable of performing work related activities such as walking, standing, sitting, as well as a degree of lifting and carrying and the basic mental functions compatible with sustained work activity. Therefore, for the foregoing reasons, the claimant's allegations of disability are not entirely credible.[55]

This explanation is a careful consideration of Hernandez's statements about her symptoms and the evidence in the record. The explanation shows that the ALJ considered the entire case record, including the objective medical evidence, Hernandez's statements about her symptoms and limitations, information provided by treating or examining physicians and/or psychologists about Hernandez's symptoms and their effect on Hernandez. The foregoing discussion contradicts Hernandez's allegation of error.

Hernandez complains about the ALJ's treatment of Dr. Hostetter's opinion about her

---

[55]SSA record, pp. 17-18 (references to record exhibits omitted).

Global Assessment of Functioning score,[56] but the ALJ explained why the score did not indicate Hernandez is disabled. In explaining why Hernandez's depression did not meet section 12.04 of Appendix 1 (affective disorders), the ALJ wrote the following:

> This determination is consistent with the findings and conclusions of the state-agency physicians, with the exception of their finding of "marked difficulties maintaining concentration, persistence, or pace. . . . However, as mentioned Dr. Hostetter assessed the claimant with a GAF score indicating only "moderate" symptoms, and in fact the claimant's GAF score, at 60, was at the upper end of that rating scale, very close to the category indicating only mild symptoms and good overall functioning. Moreover, the claimant's recent hearing testimony fails to support any marked restriction of her ability to maintain concentration, persistence, or pace, as she described spending her time indoors focused on reading books and magazines.[57]

Supporting his assessment of Hernandez's residual functional capacity, the ALJ wrote the following:

> The claimant also alleges disability due to her depression; however, as a result of her August 2004 mental status evaluation, Dr. Hostetter assessed the claimant with a GAF indicating only moderate symptoms, noting no special preoccupations of [sic] delusions, no looseness of associations of tangential thinking with the claimant's mental activity. The claimant was oriented in three spheres, and though she showed degraded concentration ability, she had intact memory, fair insight, judgment, and intellectual functioning, as well as normal pace and "average" persistence and ability to handle stress. Dr. Hostetter opined that although the claimant had not yet reached full remission, she had a fair prognosis as her disorder was responding to appropriate antidepressant medications, and she was competent to handle her own finances. Moreover, there is nothing in the more recently provided medical evidence to indicate a degree of functional

---

[56]The global assessment of functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-36. Under the GAF scale, a score of 51-60 equates to moderate symptoms or any moderate difficulty in social, occupational, or school functioning. A score of 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning. Dr. Hostetter gave Hernandez a score of 60.

[57]SSA record, p. 17 (references to record exhibits omitted).

restriction incompatible with sustained work activity.[58]

The ALJ did not err in his consideration of the GAF score. To the extent that Hernandez has problems with concentration, persistence and pace, the ALJ recognized Hernandez's limitation and restricted Hernandez to work that did not require the ability to understand and carry out complex instructions.[59]

Having addressed Hernandez's allegations of error, what remains is whether substantial evidence supports the ALJ's opinion that Hernandez can perform a range of light work. The following substantial evidence supports the ALJ's decision:[60] (1) internal medicine consultation by Dr. Jorge Estrada, opining that Hernandez's symptoms seemed out of proportion to examination results and finding that both thoracic and lumbar spine were not tender;[61] (2) physical residual functional capacity assessment by Dr. Terry Collier, opining that Hernandez can lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday, has good strength in both hands without function loss, but is limited in reaching, handling, fingering, feeling, due to history of carpal tunnel syndrome;[62] (3) psychiatric review technique by Dr. J.D. Marler, opining that Hernandez is not significantly limited in the ability to understand, remember, and carry out very short and simple instructions, to sustain an ordinary routine

---

[58]*Id*. at p. 18.

[59]*Id*.

[60]Duplicate medical records and non-medical-record documents comprise much of the record.

[61]SSA record, pp. 187-91.

[62]*Id*. at pp. 262-66.

15

without special supervision, or to make simple work-related decisions;[63] and (4) Dr. Martinez's treatment notes.

### Recommendation

Substantial evidence supports the ALJ's decision that Hernandez is not disabled and the ALJ did not make an error of law. I recommend that Hernandez's request for relief (docket entry # 1) be DENIED and that the Commissioner's decision denying Hernandez SSI benefits be AFFIRMED.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[64] Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de*

---

[63]*Id*. at p. 283.

[64]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

*novo* determination by the district court.⁶⁵  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.⁶⁶

**SIGNED** on March 31, 2009.

*[signature: Nancy Stein Nowak]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

⁶⁵*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

⁶⁶*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).